CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED
MAY 16 2014
JULIA C. DUDLEY, CLERK
BY: /s/
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
CHARLOTTESVILLE DIVISION

| | |
|---|---|
| ALAN L. COOK AND JACKIE A. COOK, | |
| Plaintiffs, | Civil Action No. 3:14CV00007 |
| v. | **MEMORANDUM OPINION** |
| CITIFINANCIAL, INC. and ALG TRUSTEE, LLC, | By: Hon. Glen E. Conrad<br>Chief United States District Judge |
| Defendants. | |

Alan and Jackie Cook filed this action against CitiFinancial, Inc. ("Citi") and ALG Trustee, LLC ("ALG Trustee"). Citi has moved to dismiss the complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. For the reasons set forth below, Citi's motion will be granted in part and denied in part.

## Background

The following facts, taken from the plaintiffs' complaint, are accepted as true for purposes of the instant motion. See Erickson v. Pardus, 551 U.S. 89, 94 (2007).

On March 18, 2008, Mr. Cook obtained a mortgage loan from Citi. The loan was evidenced by a note signed by Mr. Cook, and secured by a deed of trust on the Cooks' property located at 8241 Thomas Nelson Highway, Lovingston, Virginia.[1] The note and the deed of trust provide that the failure to make mortgage payments constitutes an event of default that may lead to foreclosure and other remedies in favor of the lender.

On September 12, 2011, Mr. Cook went to Citi's office in Charlottesville and spoke to the company's office manager, Danielle Clements. At that time, Mr. Cook "was current on the note

---

[1] Both Mr. and Mrs. Cook executed the deed of trust.

but struggling to make payments and in imminent danger of default." Compl. ¶ 19. When Mr. Cook shared this information with Ms. Clements, she suggested that he consider pursuing a mortgage loan modification under the federal Home Affordable Modification Program ("HAMP"). Ms. Clements advised Mr. Cook that he would be required to stop making his mortgage payments and allow his home to fall into foreclosure in order to qualify for the program. She claimed that Citi would "have to modify the loan" once his home fell into foreclosure, and that Citi would "probably be able to cut [his] interest rate to under four percent [and] reduce the amount [he owed] by 25 to 30 thousand dollars." Id. at ¶¶ 21, 25.

Mr. Cook responded that he was "leery" about the possibility of foreclosure, and advised Ms. Clements that he would need time to think about the requirements that she mentioned. Id. at ¶¶ 22, 26. When Mr. Cook asked what he would need to do if he elected to take this course of action, Ms. Clements responded as follows: "You do nothing, don't come back here, or anything. [Stop] making the payments, and you will begin to get letters from the loan [modification] people, but ignore the letters until you get a date for a foreclosure sale and then call the office listed on the letter and they'll get you started." Id. at ¶ 27.

Relying on Ms. Clements' representations, which the plaintiffs now claim were false, Mr. Cook subsequently stopped making his mortgage payments. In the spring of 2012, Mr. Cook began receiving correspondence from Citi informing him of his default and directing him to call a toll free number for assistance. However, "because Clements had told [him] he would receive such letters and that he should not respond until the letters advised him he was in foreclosure, [Mr.] Cook, doing what Clement[s] had told him to do, did not respond to such correspondence." Id. at ¶ 41.

At some point prior to 2013, Citi engaged One Main Financial ("One Main") to service Mr. Cook's loan. On June 17, 2013, Mr. Cook received a letter from One Main encouraging him to call Ronald Bates in One Main's loss mitigation department for help in resolving his mortgage payment issues. That same day, Mr. Cook received a letter from Atlantic Law Group advising him that ALG Trustee had been appointed as substitute trustee, and that his property would be sold at a foreclosure sale on July 17, 2013.

Based on his initial conversation with Ms. Clements, Mr. Cook believed that it was now time for him to pursue a HAMP loan modification. He subsequently placed over 20 phone calls to One Main in an effort to reach Mr. Bates. On several occasions, the line went dead following a short recording, and he was unable to leave a message. On other occasions, Mr. Cook briefly spoke to representatives who proceeded to hang up on him.

On July 11, 2013, Mr. Cook spoke to a One Main representative named Patricia, who advised him of several items of information that he would need to provide with his application for a loan modification. Patricia gave Mr. Cook a fax number to use for submitting the necessary documents and told him that his case had been assigned to Charissa Brown-Warren.

On July 15, 2013, Mr. Cook spoke to Ms. Brown-Warren, who introduced herself as the loss mitigation department supervisor. Ms. Brown-Warren advised Mr. Cook that his case was on hold because certain income documents pertaining to Mr. Cook's federal government benefits had not been dated for the current year. She indicated that his case would remain on "pending/hold status" for 30 days in order for him to obtain the necessary documents, and that the scheduled foreclosure would be postponed during that time. Id. at ¶ 55.

Mr. Cook subsequently made arrangements for the requested income documents to be sent to One Main. On July 17, 2013, Mr. Cook called One Main and spoke to a representative named

Miriam. Miriam told Mr. Cook that she had "great news," and that "it looked like the underwriters had approved a loan modification." Id. at ¶ 65. However, later that day, Mr. Cook called the same phone number and spoke to a One Main representative named Taskeba. After confirming Mr. Cook's identity, Taskeba told him that the foreclosure sale would proceed that day as originally scheduled, because Mr. Cook failed to timely provide the necessary income documents. When Mr. Cook asked her about the 30-day hold that Ms. Brown-Warren had mentioned, the representative indicated that "she had never heard of such a thing," and that there was nothing that he could do to stop the foreclosure sale. Id. at ¶ 67.

Upon receiving this information, Mr. Cook rushed to see an attorney in Lovingston. Although the attorney wrote a letter to Atlantic Law Group on Mr. Cook's behalf, it was too late for the plaintiffs to stop the foreclosure sale, which took place at 1:30 p.m. that day.

Citi submitted the highest bid for the Cooks' property. On August 19, 2013, a trustee's deed was recorded in the land records of Nelson County, Virginia, conveying the property to Citi. On September 10, 2013, Citi filed an unlawful detainer action against the Cooks in the General District Court of Nelson County. The General District Court awarded possession of the property to Citi.

On February 3, 2014, the Cooks filed the instant action against Citi and ALG Trustee in the Circuit Court of Nelson County, asserting claims of fraud, constructive fraud, breach of the deed of trust, and breach of the implied covenant of good faith and fair dealing.[2] Citi removed the case to this court. Upon removal, Citi moved to dismiss the complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. The court held a hearing on the motion on April 21, 2014.

---

[2] ALG Trustee was named as a "nominal defendant," since it executed the deed conveying the property to Citi.

4

## Standard of Review

When deciding a motion to dismiss for failure to state a claim, the court must accept as true all well-pleaded allegations and draw all reasonable factual inferences in the plaintiffs' favor. Vitol, S.A. v. Primerose Shipping Co., 708 F.3d 527, 539 (4th Cir. 2013). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (internal citation and quotation marks omitted). To survive dismissal for failure to state a claim, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 570). In reviewing a Rule 12(b)(6) motion, the court may consider the complaint, its attachments, and documents "attached to the motion to dismiss, so long as they are integral to the complaint and authentic." Sec'y of State for Defence v. Trimble Navigation Ltd., 484 F.3d 700, 705 (4th Cir. 2007).

## Discussion

### I. Counts One and Two: Actual Fraud and Constructive Fraud

In Counts One and Two of their complaint, the Cooks assert claims for actual fraud and constructive fraud against Citi. To support these claims, the plaintiffs allege that Citi representatives made false statements to Mr. Cook, either intentionally or negligently, on multiple occasions. Specifically, the plaintiffs allege that on September 12, 2011, Danielle Clements falsely informed Mr. Cook that he would have to stop making his mortgage payments and allow his home to fall into foreclosure in order to qualify for a HAMP loan modification. The plaintiffs also assert that Clements falsely advised him that he should ignore any loan modification letters

until he received notification of the date for the foreclosure sale. Additionally, the plaintiffs allege that on July 15, 2013, Charissa Brown-Warren falsely advised Mr. Cook that his loan modification application had been placed on hold for 30 days, and that the foreclosure sale would be stayed during that time. The plaintiffs claim that Mr. Cook reasonably relied on each of these false statements to his detriment.

Under Virginia law, "[a] cause of action for actual fraud requires the plaintiff to prove: (1) a false representation, (2) of a material fact, (3) made intentionally and knowingly, (4) with intent to mislead, (5) reliance by the party misled, and (6) resulting damage to the party misled." Cohn v. Knowledge Connections, Inc., 585 S.E.2d 578, 581 (Va. 2003). To prevail on a claim for constructive fraud, a plaintiff must prove that the defendant negligently made a false representation of a material fact, and that he suffered damage as a result of his reasonable reliance on the misrepresentation. See Bank of Montreal v. Signet Bank, 193 F.3d 818, 826-27 (4th Cir. 1999). Fraud claims are subject to Rule 9(b) of the Federal Rules of Civil Procedure, which requires that plaintiffs "state with particularity the circumstances constituting fraud . . . ." Fed. R. Civ. P. 9(b).

In moving to dismiss Counts One and Two, Citi argues that the plaintiffs cannot establish that Mr. Cook reasonably relied on the oral representations at issue, since the note and the deed of trust expressly state that the failure to make mortgage payments may lead to foreclosure. At this stage of the proceedings, however, the court is unable to agree. The issue of whether a party reasonably relied on representations is ordinarily a question for the trier of fact to determine. See Bank of Montreal, 193 F.3d at 834 (noting that the reasonableness of a party's reliance is a "question[] to be decided by the jury in light of, inter alia, the nature of the parties and the transaction, the representations, omissions, and distractions presented by the defendant, and the

duties of investigation assumed by the plaintiff"); Miller v. Premier Corp., 608 F.2d 973, 982 (4th Cir. 1979) (emphasizing that the "issues of reliance and its reasonableness, going as they do to subjective states of mind and applications of objective standards of reasonableness, are preeminently factual issues for the trier of fact"). Assuming the truth of the plaintiffs' allegations regarding the representations made by Citi's agents, the court concludes that the allegations plausibly satisfy this element. See, e.g., Morrison v. Wells Fargo Bank, N.A., No. 2:13cv576, 2014 U.S. Dist. LEXIS 5275, at *19 (E.D. Va. Jan. 15, 2014) (holding that the plaintiff's allegations satisfied the reasonable reliance element, where the plaintiff elected not to obtain counsel to stop a foreclosure sale because he was under the impression, based on statements made by the defendant's representatives, that the foreclosure sale would not take place on that date); Bennett v. Bank of America, No. 3:12CV34-HEH, 2012 U.S. Dist. LEXIS 54725, at *26 (E.D. Va. Apr. 18, 2012) (declining to dismiss the plaintiff's claim that the defendant defrauded him by falsely representing that it would cancel a foreclosure sale); Matanic v. Wells Fargo Bank, N.A., No. 3:12CV472, 2012 U.S. Dist. LEXIS 135154, at *18 (E.D. Va. Sept. 19, 2012) (holding that the plaintiff sufficiently stated a claim for actual fraud based on conversations with an unidentified representative of the defendant, who advised the plaintiff that the defendant would be willing to stop the foreclosure proceedings if he provided certain tax information).

To support its argument to the contrary, Citi cites a number of cases in which courts relied on the statute of frauds to dismiss claims for fraud that were based on oral representations regarding mortgage loans. See, e.g., McFadden v. Fed. Nat'l Mortg. Ass'n, No. 7:11-cv-335, 2012 U.S. Dist. LEXIS 2391, at *17 (W.D. Va. Jan. 9, 2012) (noting that oral promises affecting real estate are unenforceable) (citing Va. Code § 11-2); Hernandez v. United States Bank, N.A., No. 3:13-cv-2164, 2013 U.S. Dist. LEXIS 181364, at *30 (N.D. Tex. Dec. 27, 2013) (holding that

the plaintiffs' claim that the defendants deceptively informed them to stop making payments while their loan was being reviewed was barred by the statute of frauds adopted in Texas); Adams v. JP Morgan Chase Bank, No. 1:10-cv-4226, 2011 U.S. Dist. LEXIS 67982, at *17 (N.D. Ga. June 24, 2011) (noting that under Georgia law, a fraud claim cannot be founded on a promise that fails to satisfy the statute of frauds) (internal citation omitted). Under Virginia law, however, the statute of frauds is no bar to a tort claim for fraud. See Colonial Ford Truck Sales, Inc. v. Schneider, 325 S.E.2d 91, 94 (Va. 1985) ("The sole function of the statute of frauds is to prevent enforcement of an oral contract or promise as defined in the statute. The statute does not foreclose relief in a cause in equity based upon misrepresentation, and it does not apply to a tort claim based upon actual fraud. Hence, the trial court erred in holding that [the plaintiff's] fraud claim was barred by the statute of frauds.") (internal citation omitted); see also Bennett, 2012 U.S. Dist. LEXIS 54725, at *27-28 (emphasizing that the statute of frauds had "no bearing on Plaintiff's fraud claim"). For these reasons, Citi's motion to dismiss will be denied with respect to Counts One and Two.

## II.    Count Three: Breach of the Deed of Trust

In Count Three of the complaint, the plaintiffs claim that Citi breached the provision of the deed of trust requiring compliance with "applicable law" by foreclosing on their property while Mr. Cook's HAMP loan modification application was still pending.[3] The plaintiffs contend that this course of action violated the HAMP guidelines contained in a Supplemental Directive issued

---

[3] Section 17 of the deed of trust provides that, if a borrower fails to cure a default, "Lender, at Lender's option, may declare all of the sums secured by this Deed of Trust to be immediately due and payable without further demand and may invoke the power of sale and any other remedies permitted by applicable law." Deed of Trust § 17. If the lender invokes the power of sale, it is required to provide "notice of sale in the manner prescribed by applicable law." Id. The deed of trust states that "[t]he state and local laws applicable to this Deed of Trust shall be the laws of the jurisdiction in which the Property is located," but that "[t]he foregoing sentence shall not limit the applicability of Federal law to this Deed of Trust." Id. at § 13.

8

by the United States Department of the Treasury on April 6, 2009,[4] and that these guidelines are incorporated into the deed of trust. For the following reasons, the court concludes that Count Three is without merit.

Under Virginia law, a deed of trust is considered a contract and must be construed as written, without adding terms that were not included by the parties. Mathews v. PHH Mortg. Corp., 724 S.E.2d 196, 200-01 (Va. 2012). The term "applicable law," on which the plaintiffs rely, has been construed narrowly by most courts. Condel v. Bank of America, N.A., No. 3:12CV212-HEH, 2012 U.S. Dist. LEXIS 93206, at *22-23 (E.D. Va. July 5, 2012); see also Polinovsky v. Deutsche Lufthansa, AG, No. 11CV780, 2012 U.S. Dist. LEXIS 44363, at *8 (N.D. Ill. Mar. 30, 2012) (surveying cases that have "rejected the argument that a generic boilerplate reference to compliance with all 'applicable law' incorporated certain specific regulations into the contract at issue"). Absent clear language to the contrary, this term is generally understood to incorporate only those laws which exist at the time the contract was formed, and is not interpreted to incorporate future changes to the law. Condel, 2012 U.S. Dist. LEXIS 93206, at *23-24 (citing cases); see also Gazale v. Gazale, 250 S.E.2d 365, 366 (Va. 1979) ("New statutes are usually presumed to operate prospectively only, . . . and contractual rights and duties are controlled by the law in effect at the time the contract was executed."); Kia Motors America, Inc. v. Glassman Oldsmobile Saab Hyundai, Inc., 706 F.3d 733, 738 (6th Cir. 2013) ("[I]t is a generally accepted rule of construction that changes in the law subsequent to the execution of a contract are not deemed to become part of [the] agreement unless its language clearly indicates such to have been

---

[4] See HAMP Supplemental Directive 09-01, at 14 (Apr. 6, 2009) ("To ensure that a borrower currently at risk of foreclosure has the opportunity to apply for the HAMP, servicers should not proceed with a foreclosure sale until the borrower has been evaluated for the program and, if eligible, an offer to participate in the HAMP has been made.") (available at https://www.hmpadmin.com//portal/programs/docs/hamp_servicer/sd0901.pdf) (last visited May 15, 2014).

9

[the] intention of [the] parties.") (internal citations and quotation marks omitted).

In this case, even assuming that the Treasury Department's Supplemental Directive has the force of law,[5] it is undisputed that the document was not issued until April of 2009, more than a year after the Cooks executed the deed of trust in favor of Citi. In the absence of any language clearly indicating the parties' intention to be bound by future laws, the court concludes that the Supplemental Directive is not incorporated in the deed of trust, and that the plaintiffs "therefore cannot rely on [the lender's] purported violation of [the] Supplemental Directive . . . as grounds for breach of contract." Condel, 2012 U.S. Dist. LEXIS 93206, at *25. Accordingly, Citi's motion to dismiss will be granted with respect to Count Three.

### III. Count Four: Breach of the Implied Covenant of Good Faith and Fair Dealing

In their fourth count, the plaintiffs claim that Citi breached the implied covenant of good faith and fair dealing under the Uniform Commercial Code ("UCC"), as adopted in Virginia, by engaging in the conduct outlined above. See Compl. ¶¶ 128-129 ("Because the note was a negotiable instrument under the UCC, and because Va. Code § 8.1A-304 imposed the duty of good faith and fair dealing on the holder of the note, the deed of trust also carried with it an implied duty of good faith and fair dealing as required by such statute. The actions by CitiFinancial . . . constituted breaches of the aforesaid implied covenant of good faith and fair dealing.").

The court agrees with Citi that Count Four is subject to dismissal for several reasons. First, "the UCC does not apply to transfers of real property." Jones v. Fulton Bank, N.A., No. 13-2034, 2014 U.S. App. LEXIS 6517, at *4 (4th Cir. Apr. 9, 2014) (affirming the dismissal of a

---

[5] The plaintiffs acknowledge the weight of authority is against them on this issue. See Pls.' Br. in Opp'n at 20 ("A greater problem for the Cooks on this issue is the question whether the federal guideline prohibiting foreclosure while a HAMP application is pending constitutes a federal administrative rule with the force of law. On this issue, three circuit courts in Virginia have held against the contention that HAMP Supplemental Directive No. 09-01 . . . constitutes a federal administrative rule with the force of law.").

10

claim for breach of the implied covenant of good faith and fair dealing that was premised on similar allegations) (citing Greenwood Assocs., Inc. v. Crestar Bank, 448 S.E.2d 399, 402 (Va. 1994)). Second, even if the deed of trust falls under the UCC as the plaintiffs argue, their claim fails because "the failure to act in good faith . . . does not amount to an independent tort," but instead "gives rise only to a cause of action for breach of contract." Charles E. Brauer Co. v. NationsBank of Va., N.A., 466 S.E.2d 382, 385 (Va. 1996). Moreover, the terms of the note and the deed of trust expressly allow Citi to foreclose in the event of default, and neither the note nor the deed of trust create a duty on the part of Citi to facilitate a loan modification. Because the implied covenant of good faith and fair dealing "does not prevent a party from exercising its explicit contractual rights," or "compel a party to take affirmative action not otherwise required under the contract," the court concludes that the complaint fails to state a plausible claim for recovery under this theory of liability. Rehbein v. CitiMortgage, Inc., 937 F. Supp. 2d 753, 763 (E.D. Va. 2013) (internal citations and quotation marks omitted); see also Bennett, 2012 U.S. Dist. LEXIS 54725, at *29 (dismissing a "stand-alone implied covenant claim" in a similar case). Accordingly, Citi's motion will be granted with respect to Count Four.

## Conclusion

For the reasons stated, Citi's motion to dismiss will be granted in part and denied in part. The Clerk is directed to send certified copies of this memorandum opinion and the accompanying order to all counsel of record.

ENTER: This 16th day of May, 2014.

_/s/ Glen Conrad_
Chief United States District Judge

11